UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF TENNESSEE
AT GREENEVILLE

| | | |
|---|---|---|
| RONNIE CLEVENGER        Plaintiff, | ) ) ) | |
| v. | ) ) | NO. 2:05-CV-57 NO: 2:03-CR-75 |
| UNITED STATES OF AMERICA        Defendant. | ) ) ) | |

**MEMORANDUM OPINION**

This matter is before the Court on the motion and amended motion of Ronnie Clevenger ("petitioner" or "Clevenger"), a federal prisoner, to vacate, set aside, or correct his sentence pursuant to 28 U.S.C. § 2255, [Docs. 1, 10]. The United States has responded in opposition to the motion and has filed the affidavit of William M. Liebrock, petitioner's trial counsel, in support of its opposition, [Doc. 20]. Clevenger subsequently supplemented his motion with his own affidavit and the affidavit of his wife, [Doc. 21]. The Court has determined that the files and records of the case conclusively establish that the petitioner is not entitled to relief under § 2255 and that, therefore, no evidentiary hearing is necessary. For the reasons which follow, the petitioner's motion will be DENIED.

**I.    Procedural and Factual Background**

On September 23, 2003, an indictment was returned by the federal grand jury

charging Ronnie Lee Clevenger with conspiring to manufacture marijuana, in excess of 100 plants, in violation of 21 U.S.C. §§ 846 and 841(a)(1) and (b)(1)(B) (Count I); with manufacturing marijuana, in excess of 100 plants, in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(B) (Count II); with manufacturing marijuana, in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(B) (Count III); and with possessing firearms in furtherance of drug trafficking crimes in violation of 18 U.S.C. § 924(c) (Count IV). After the filing of extensive motions in the case, Clevenger pled guilty on February 17, 2004, to Counts I and III of the indictment. Upon his guilty plea, the Court ordered a presentence report ("PSR") to be prepared by the United States Probation Office and a sentencing date of May 10, 2004, was set.

At the time of the entry of petitioner's plea of guilty, an agreed factual basis was submitted by the parties as part of the plea agreement in the case. The defendant stipulated to the following facts:

> The following events occurred in Cocke County, Tennessee. In April 2002, law enforcement officers of the United States Forest Service observed a suspected marijuana cultivation site during an aerial reconnaissance in Cocke County, in the Eastern District of Tennessee. In May, 2002, law enforcement officers of the United States Forest Service conducted a ground reconnaissance of the same area and discovered a cultivated site of over 200 growing marijuana plants. Numerous dead plants were also found at the edge of the site. A footpath led from the site to a trail. The trail led to an open field behind 1063 Sierra Street, the residence of Donnie Clevenger. The residence

is located approximately 1/4 mile from the site of the growing marijuana. A covert video surveillance system placed on the site by officers recorded the defendant, Ronnie Clevenger, and his co-defendant, Donnie Clevenger, tending and cultivating the marijuana plants on June 1, 2002, and on June 2, 2002. Donnie Clevenger was recorded walking on a trail leading to the site on June 16, 2002. On June 29, 2002, Donnie and Ronnie Clevenger were again recorded pulling weeds and applying fertilizer around the marijuana plants. On July 27, 2002, Donnie Clevenger was again recorded at the site, this time pulling male marijuana plants, a procedure used to increase the yield of the remaining female plants. On August 16, 2002, a search warrant was executed on the residence of Ronnie Clevenger. Seized, pursuant to that search, were more than 250 marijuana seeds; cultivation and pruning tools, which had been used to cultivate the marijuana plants described herein; scales for weighing marijuana; starter trays for cultivating marijuana; ziplock bags; peat pellets, used to cultivate marijuana; a spool of string, used to tie marijuana plants to stakes; 5 loaded firearms; camouflage clothing and face masks; a triple beam balance scale; a hedge trimmer, used to clear vegetation near marijuana plants; bug killer dust, used to treat marijuana plants; lime green rebar sticks used to support growing marijuana plants; a Honda all-terrain vehicle, used to transport Ronnie Clevenger to and from the site of the growing marijuana plants; bamboo poles, used to support and cultivate the growing marijuana plants; 8 quarts untaxed (moonshine) liquor; and 54 growing marijuana plants.

On April 8, 2004, the PSR prepared by the United States Probation Office was disclosed to the parties. Based on a total offense level of 17, which included a two level enhancement pursuant to USSG § 2D1.1(b)(1) for possession of a dangerous weapon, and a criminal history category of I, the PSR determined defendant's

3

guideline range for imprisonment to be 24 to 30 months; however, because the defendant was subject to a statutory mandatory minimum sentence of 60 months imprisonment for Count 1, his guideline sentence was 60 months. On May 10, 2004, Clevenger was sentenced to the mandatory minimum term of 60 months imprisonment. No written objections to the PSR were filed by the defendant, and no objection was made by him orally at the sentencing hearing. Judgment was entered on May 18, 2004, and no direct appeal was taken by the petitioner.[1]

Petitioner's *pro se* § 2255 motion was timely filed on March 1, 2005. In his petition, Clevenger alleges that he received an "[i]nconsistent and illegal sentence." As supporting facts, Clevenger states: "I was sentenced to 60 months while my co-defendant who had a prior conviction was sentenced to 24 months. I did not get the benefit of the safety valve and was enhanced because my home contained several firearms. None of the enhancing factors were considered by a jury prior to the entry of my plea of guilty and my sentence is simply unfair and illegal under the law." In the accompanying two page memorandum, petitioner refers to "recent developments in the sentencing guidelines" and cited *Blakely v. Washington* and *United States v. Booker*. He avers that not only is his sentence grossly unfair but it is one of the

---

[1] The petitioner was advised by the Court at his sentencing hearing that he had a right to appeal the sentence imposed by the Court and that any notice of appeal must be filed within ten days of the entry of the judgment. The petitioner was further advised that, at his request, the Clerk of the Court would prepare and file the notice of appeal for him.

inequities that should be remedied by the recent cases of *Blakely* and *Booker*. Clevenger seeks a reduction in his sentence from 60 months to 24 months. On March 10, 2005, the Court summarily denied petitioner's § 2255 motion, holding that his safety valve argument was foreclosed by his failure to take a direct appeal and that *Booker* was not applicable to cases on collateral review, [Doc. 3].

On March 24, 2005, petitioner filed a motion to amend his original § 2255 motion, [Doc. 4], and a motion to alter or amend judgment, [Doc. 5]. In these filings, Clevenger alleged that his lawyer "failed to file a notice of appeal."[2] The Court granted petitioner's motion on April 25, 2005, and directed that he file any amended petition by May 20, 2005, [Doc. 6]. On May 13, 2005, petitioner filed his amended motion, [Doc. 10], and on May 20, 2005, filed a motion for appointment of counsel, [Doc. 11]. On June 7, 2005, the Court granted the motion for appointment of counsel and, on July 20, 2005, counsel filed a supplement to Clevenger's § 2255 motion, [Doc. 16].[3] In this supplement, it is alleged that petitioner "advised his counsel he wanted to appeal his sentence." The United States was ordered to respond and the

---

[2] Attached to the motion to alter or amend is a letter to petitioner from William M. Liebrock, his trial counsel, dated February 23, 2005, which references an enclosed "Motion for Reduction in Sentence" along with instructions on how to file the motion. In his motion, petitioner states: "Clevenger's lawyer failed to file a Notice of Appeal but tried to make up for it by sending Clevenger a Motion for a Reduction in Sentence. Clevenger [sic] lawyer filled out the § 2255 form but could not state a claim of ineffective assistance of counsel on himself."

[3] The United States does not argue that these claims were filed outside the one year statute of limitations because they arguably relate back to the timely filed claims. The United States is likewise not arguing that petitioner's supplemental filings constitute a successive petition that must meet the gatekeeping requirements of the AEDPA.

government's response was filed on September 26, 2005, [Doc. 20]. In a second supplement to his § 2255 petition filed on April 21, 2006, the petitioner filed his affidavit and that of his wife.

## II.     Standard of Review

This Court must vacate and set aside petitioner's sentence if it finds that "the judgment was rendered without jurisdiction, or that the sentence imposed was not authorized by law or otherwise open to collateral attack, or that there has been such a denial or infringement of the constitutional rights of the prisoner as to render the judgment vulnerable to collateral attack, . . . ." 28 U.S.C. § 2255. Under Rule 4 of the governing rules, the Court is to consider initially whether the face of the motion itself, together with the annexed exhibits and prior proceedings in the case, reveal that the movant is not entitled to relief. If it plainly appears the movant is not entitled to relief, the court may summarily dismiss the § 2255 motion under Rule 4.

When a defendant files a § 2255 motion, he must set forth facts which entitle him to relief. *Green v. Wingo*, 454 F.2d 52, 53 (6th Cir. 1972); *O'Malley v. United States*, 285 F.2d 733, 735 (6th Cir. 1961). "Conclusions, not substantiated by allegations of fact with some probability of verity, are not sufficient to warrant a hearing." *O'Malley*, 285 F.2d at 735 (citations omitted). A motion that merely states general conclusions of law without substantiating allegations with facts is without

legal merit. *Loum v. Underwood*, 262 F.2d 866, 867 (6th Cir. 1959); *United States v. Johnson*, 940 F. Supp. 167, 171 (W.D. Tenn. 1966).

To warrant relief under 28 U.S.C. § 2255 because of constitutional error, the error must be one of constitutional magnitude which had a substantial and injurious effect or influence on the proceedings. *See Brecht v. Abrahamson*, 507 U.S. 619 (1993) (citations omitted) (§ 2254 case); *Clemmons v. Sowders*, 34 F.3d 352, 354 (6th Cir. 1994); *see also United States v. Cappas*, 29 F.3d 1187, 1193 (7th Cir. 1994) (applying *Brecht* to a § 2255 motion). To warrant relief for a non-constitutional error, the petitioner must show a fundamental defect in the proceeding that resulted in a complete miscarriage of justice or an egregious error inconsistent with the rudimentary demands of fair procedure. *Reed v. Farley*, 512 U.S. 339 (1994); *Grant v. United States*, 72 F.3d 503, 506 (6th Cir.), *cert. denied*, 517 U. S. 1200 (1996). In order to obtain collateral relief under § 2255, a petitioner must clear a significantly higher hurdle than would exist on direct appeal. *United States v. Frady*, 456 U.S. 152 (1982).

Petitioner did not appeal his conviction or sentence. In order to obtain review in a § 2255 proceeding on an issue not raised on direct review, a petitioner must demonstrate cause for his failure to raise the issue on appeal and prejudice arising therefrom. *See Frady*, 456 U.S. at 167-168; *Ratliff v. United States*, 999 F.2d 1023,

7

1025 (6th Cir. 1993). Petitioner in this case alleges two instances of ineffective assistance of counsel. First of all, he alleges that counsel failed to file an appeal of the Court's sentence even though the petitioner had requested him to do so. Secondly, he argues that his counsel was ineffective in failing to object to the factual determination that Clevenger possessed a firearm in connection with the underlying offense, thereby making Clevenger ineligible for application of the safety valve contained in USSG § 5C1.2. Petitioner acknowledges that his issues have in essence been procedurally defaulted as a result of his failure to file a direct appeal.

A procedurally defaulted claim may only be raised in a § 2255 motion if the petitioner can first demonstrate either (1) "cause" to excuse his failure to raise the claim previously and actual "prejudice" resulting from the alleged violation, or (2) "actual innocence." *Bowsley v. United States*, 523 U.S. 614, 622 (1998). Ineffective assistance of counsel constitutes cause to excuse a procedural default. *Ratliff*, 999 F.2d at 1026.

The standard for establishing ineffective assistance of counsel is the familiar standard articulated in *Strickland v. Washington*, 466 U.S. 668 (1984). The defendant must establish that counsel's acts or omissions "were outside the range of professionally competent assistance." *Id.* at 690. Judicial scrutiny of counsel's performance is "highly deferential," and the Court must avoid second guessing

counsel's strategy for obtaining a favorable result for the client. *Id.* at 689. The burden is on the defendant to prove, by a preponderance of the evidence, that counsel's performance was unreasonable. *Id.* at 687-88. The reasonableness of counsel's performance is an objective inquiry. *Id.* at 688.

In the context of a failure by counsel to file a notice of appeal, the question of whether such failure constitutes ineffective assistance of counsel is governed by the rule set forth in *Roe v. Flores-Ortega*, 528 U.S. 470 (2000). There, the Supreme Court stated that "a lawyer who disregards specific instructions from the defendant to file a notice of appeal acts in a manner that is professionally unreasonable." In such a case, the "defendant is entitled to [a new] appeal without showing that his appeal would likely have had merit." *Id.* at 477 (quoting *Peguero v. United States*, 526 U.S. 23 (1999)). Further, the Court noted that where the defendant specifically instructed his attorney not to file an appeal, the defendant could not later raise a claim of ineffective assistance of counsel predicated on the attorney's failure to file a notice of appeal. *Id.* at 477. The Court then determined that where the defendant did not clearly indicate his wishes, the question of whether counsel was ineffective for failing to file a notice of appeal was to be decided under the ineffective assistance standard of *Strickland v. Washington*, *i.e.*, that counsel's representation "fell" below an objective standard of reasonableness" and that he suffered prejudice as a result of

counsel's deficient performance.

In determining, under the *Strickland* standard, whether counsel was ineffective for failing to file a notice of appeal where no explicit instructions were given by the defendant, the initial inquiry centers on whether counsel "consulted" with the defendant regarding an appeal. *Roe*, 528 U.S. at 478. "If counsel has consulted with the defendant, the question of deficient performance is easily answered: Counsel performs in a professionally unreasonable manner only by failing to follow the defendant's express instructions with respect to an appeal." *Id.* If counsel did not consult with the defendant, the question then becomes whether counsel's failure to do so constitutes deficient performance. With respect to that question, the Court held that counsel has a constitutionally imposed duty to consult with the defendant about an appeal where there is reason to think either (1) that a rational defendant would want to appeal (for example because there are non-frivolous grounds for an appeal), or (2) that this particular defendant reasonably demonstrated to counsel that he was interested in appealing. *Roe*, 528 U.S. at 480.

### III. Analysis and Discussion

As set forth above, petitioner asserts claims of ineffective assistance of counsel for (1) failure of trial counsel to file a notice of appeal and (2) failure of trial counsel to object to the PSR's factual determination that Clevenger possessed a firearm and

failure of the PSR to apply the safety valve provisions of USSG § 5C1.2. The Court will deal with the issue of the notice of appeal first.

### 1. Failure to File the Notice of Appeal

As set forth above, failure of trial counsel to file a notice of appeal, in derogation of defendant's actual request, is a *per se* violation of the Sixth Amendment. *Ludwig v. United States*, 162 F.3d 456, 459 (6th Cir. 1998). The Sixth Circuit has emphasized, however, "that a defendant's 'actual' request is still a critical element in the Sixth Amendment analysis. The Constitution does not require lawyers to advise their clients of the right to appeal." *Id.; see also Regalado v. United States*, 334 F.3d 520, 524-526 (6th Cir. 2003) (failure to file an appeal is not ineffective assistance of counsel where an attorney was not specifically instructed to do so).

Clevenger couches this issue in terms which assume that his attorney did not follow his directions to file a notice of appeal. Petitioner is required, however, to establish, by a preponderance of the evidence, the factual predicate, *i.e.* that he did in fact timely direct his attorney to file a notice of appeal. The petitioner has failed to do so.

The petitioner fails to meet his burden of proof for several reasons. As an initial matter, the petitioner is required to set forth facts which entitle him to relief. Although he makes the conclusory claim that his attorney failed to file a notice of appeal after

being requested by petitioner to do so, he does not provide sufficient facts to support his conclusory allegation. For instance, even accepting petitioner's allegation as true, he does not identify for the Court when he made a request of counsel to file a notice of appeal. As set forth above, the judgment in this case was entered on May 18, 2004. The judgment, therefore, became final on May 28, 2004, after expiration of the ten day period within which petitioner could have filed a notice of appeal. *See Nichols v. United States*, 285 F.3d 445, 447 (6th Cir.), *cert. denied*, 537 U.S. 1023 (2002).

In fact, any allegation that defendant made his request within the ten day period is conspicuously absent from both his affidavit and that of his wife. The only "facts" offered by the petitioner are that sometime after he "got sentenced" by this Court, he talked to fellow inmates at the Greene County Jail who told him that he needed to appeal. When Mr. Liebrock, his attorney, came by on some unspecified date, Clevenger indicates that he told him he would like to appeal his case "if there was any way I could and if I was able to afford the cost to appeal it." Clevenger then claims that he told Mr. Liebrock he would send his wife to check on the price and see if they could afford it. Mrs. Clevenger's affidavit is likewise silent as to when she "talked to Mr. Liebrock about appealing Ronnie's case." Thus, even if this Court concludes that petitioner did, at some point in time, instruct his attorney to file a notice of appeal, the Court cannot conclude that the petitioner did so within the allotted time for the

filing of the notice of appeal.[4]

Next, to the extent that Clevenger has alleged that he provided timely directions to his attorney to file a notice of appeal, the Court finds the allegation not to be credible. As an initial matter, this Court has before it the affidavit of William M. Liebrock, petitioner's trial attorney. Liebrock, who has been a member of the Bar of this Court for nearly 38 years, states that he and Clevenger never discussed an appeal after Clevenger made the decision to enter his pleas of guilty. This Court finds Mr. Liebrock's statements to be completely credible, true and accurate. The Court's credibility determination is supported by other factors as well. First of all, Clevenger's initial § 2255 motion in this case made no mention of any allegation that his attorney had disregarded his specific instructions to file a notice of appeal. It was only after this Court found that the issues raised in the initial filing were procedurally defaulted because of the failure of petitioner to file a direct appeal that he ever raised the issue in the first place. Secondly, no good reason appears why Clevenger would in fact instruct his attorney to file a notice of appeal. Simply put, there was no basis for an appeal in this case and Clevenger had negotiated, with the assistance of his attorney, an agreement that allowed him to escape a potential ten year mandatory

---

[4] Although not clear on this point, it appears from counsel's affidavit that counsel had discussions about Clevenger's case with Clevenger's wife long after the time for filing a notice of appeal had passed. *See* ¶ 8 of counsel's affidavit.

13

minimum sentence.

Although Clevenger now complains that there were certain *Booker* errors committed by this Court, those issues would not have been apparent to Clevenger or his attorney prior to May 28, 2004, since *Booker* was not decided by the United States Supreme Court until January 12, 2005. This Court, therefore, fully credits trial counsel's sworn affidavit, finds that petitioner's claim that he timely instructed his attorney to file a notice of appeal is not credible and that Clevenger did not timely request or instruct his attorney to file a direct appeal. In making this determination, the Court accepts and relies on the affidavit of Clevenger's attorney. *See Cummings v. United States*, 84 Fed. App. 603, 605 (6th Cir. December 15, 2003) (District Court does not commit clear error by crediting defense counsel's affidavit stating that defendant had not asked counsel to file appeal); *Odum v. United States*, 229 F.3d 1153 (Table, text at 2000 WL 1175598, *3 (6th Cir. 2000)) (It is not clearly erroneous for district court to rely on affidavit by defense counsel stating that defendant never requested his counsel to file appeal); *Robinson v. United States*, 2005 WL 2417045, **3-4 (E.D. Tenn. Sept. 30, 2005).

Since Liebrock never consulted with Clevenger about an appeal after Clevenger was sentenced, the Court must then consider whether the failure to consult constitutes deficient performance. The Court concludes it does not. There was no reason why

14

Liebrock would think his client would want to appeal. Clevenger had entered into a plea agreement with knowledge that he would receive a five year sentence, motivated by his desire to avoid a 10 year mandatory sentence. In addition, there were no non-frivolous grounds for appeal. And, Clevenger's decision "not to take the chance of getting a ten year sentence, but to take the five year sentence" was a reasonable one under the circumstances. Furthermore, petitioner makes no showing that he did or said anything in a timely fashion to indicate to his lawyer that he desired to have a notice of appeal filed.

**2. Failure to Object to PSR**

Petitioner next claims that his counsel was constitutionally ineffective for failing to object to the firearms enhancement, assert that petitioner was entitled to consideration under the safety valve provision or raise a *Booker* argument. These arguments, too, are without merit.

**A. The Firearms Enhancement Pursuant to USSG § 2D1.1(b)(1)**

As noted above, Clevenger's offense level was increased by two levels for possession of a dangerous weapon pursuant to USSG § 2D1.1(b)(1). Pursuant to USSG § 2D1.1(b)(1) a defendant's offense level is increased two levels if a firearm "was present" unless the defendant demonstrates it was "clearly improbable that the firearm was possessed in connection with the offense." Petitioner stipulated in the plea

15

agreement and in the agreed factual basis that he possessed five loaded firearms in close proximity to marijuana seeds, cultivation and pruning tools, scales, drug paraphernalia, and various other items used in the growing and production of marijuana plants. One fully loaded pistol was found beside a marijuana growers handbook. Scales of the kind used by drug dealers to weigh small quantities of drugs were found in a wooden box with a loaded Derringer.

The government has indisputably shown by a preponderance of the evidence that defendant actually or constructively possessed the firearms during the commission of the offense. Once the government demonstrates that the defendant possessed the firearms in connection with the drug conspiracy, the burden shifts to petitioner to show that it is clearly improbable the weapons were connected with the drug conspiracy. *United States v. Moses*, 289 F.3d 847, 850 (6th Cir. 2002). Except for his conclusory allegation that the firearms were "not in any way connected with the marijuana growing area or any other aspect of the case," Clevenger offers no facts which could even remotely be argued to establish the clear improbability that the firearms were not possessed in connection with the drug conspiracy. This issue is utterly without merit.

### B. Safety Valve Eligibility

A defendant has the burden of proving by a preponderance of the evidence that he meets the five criteria necessary to qualify for a safety valve reduction. *United*

*States v. Adu*, 82 F.3d 119, 123-24 (6th Cir. 1996). Pursuant to 18 U.S.C. § 3553(f)(2), a defendant subject to certain statutory minimum sentences may, nevertheless, be sentenced below the statutory minimum if (1) the defendant does not have more than one criminal history point; (2) the defendant did not . . . possess a firearm or other dangerous weapon . . . in connection with the offense; (3) the offense did not result in death or serious bodily injury to any person; (4) the defendant was not an organizer, leader, manager or supervisor of others in the offense; and (5) not later than the time of the sentencing hearing, the defendant has truthfully provided to the government all information and evidence the defendant has concerning the offense or offenses that were a part of the same course of conduct or a common scheme or plan (or if he has no relevant or useful other information to provide). 18 U.S.C. § 3553(f)(1)-(5). Where a defendant argues he is entitled to the safety valve, the district court makes findings of fact at sentencing and a defendant has no right to have such facts determined by a jury beyond a reasonable doubt. *United States v. Patterson*, 2005 WL 2077507 at *3 (6th Cir. August 26, 2005).

  Once again, the petitioner asserts in conclusory fashion that he was safety valve eligible and that his defense attorney was somehow ineffective in not objecting to the failure of the PSR to apply the safety valve. Although it is obvious from the PSR that the defendant does not have more than one criminal history point, that the

17

offense did not result in death or serious bodily injury to any person and that defendant was not an organizer, leader, manager, or supervisor of others in the offense, he does not allege any facts which would establish that he had fully debriefed the government (requirement 5) or that he did not possess a firearm in connection with the offense. Even if the Court assumes that the debriefing requirement could be met, there does not appear to be any set of circumstances under which the defendant could prove that he did not possess a firearm in connection with the offense.

First of all, the Sixth Circuit has held that a defendant who is subject for a firearms enhancement pursuant to USSG § 2D1.1(b)(1) is not eligible for safety valve treatment. *Patterson*, 2005 WL 2077507 at \*\*4-6. Secondly, the undisputed proof in the case, including petitioner's admissions, overwhelmingly establishes that a firearm was possessed in connection with the offense. Five loaded firearms were found at petitioner's residence in close proximity to items used to further petitioner's participation in the drug conspiracy to which he pled guilty. Under these circumstances, the petitioner's attorney rightfully came to the conclusion that the firearm enhancement applied and that Clevenger was not eligible for safety valve treatment. Petitioner has shown absolutely no deficiency on the part of trial counsel in this regard. In fact, with the assistance of his attorney, petitioner was able to negotiate a very favorable plea agreement which allowed him to avoid what would

have otherwise been a mandatory minimum ten year term of imprisonment. This issue lacks any merit.

### C. *Booker* Error

There is no *Booker* violation in this case. The Sixth Circuit has clearly held that *Booker* is immaterial to mandatory minimum sentences, *see United States v. Smith*, 419 F.3d 521, 531-32 (6th Cir. 2005), and petitioner would get the very same sentence today if he were sentenced post-*Booker*. More fundamentally, the *Blakely* and *Booker* decisions had not even been decided by the United States Supreme Court at the time of petitioner's sentencing and counsel is not constitutionally ineffective for failing to anticipate the decisions in *Blakely* or *Booker*. *United States v. Burgess*, 142 Fed. App. 232 (6th Cir.), *cert. denied*, 546 U.S. 919 (2005) (holding that "[a]s a matter of law, there simply is no basis for [petitioner's] assertion that his counsel's failure to predict this novel line of authority [the *Booker* decision] 'fell below an objective standard of reasonableness.'" (quoting *Strickland*, 466 U.S. at 687-88).

### IV. Conclusion

The Court holds petitioner Clevenger's conviction and sentencing were not in violation of the Constitution and laws of the United States, and the motion to vacate, set aside, or correct his sentence pursuant to 28 U.S.C. § 2255 will be denied. The Court must now consider issues that may arise if petitioner files a notice of appeal. 28

U.S.C. 2253(c)(2) requires the district court to evaluate the appealability of its decision denying a § 2255 motion.

A certificate of appealability should issue if petitioner has demonstrated a "substantial showing of a denial of a constitutional right." 28 U.S.C. § 2253(c)(2). To warrant a grant of the certificate, "[t]he petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong. *Slack v. McDaniel*, 529 U.S. 473 (2000). Having examined each of petitioner's claims under the *Slack* standard, the Court finds that reasonable jurists could not find that the dismissal of Clevenger's claim was debatable or wrong. Therefore, the Court will **DENY** a certificate of appealibility.

Upon reflection, it also appears that petitioner's motion for appointment of counsel was improvidently granted. Therefore, the appointment of Clifton Corker to represent petitioner is hereby **TERMINATED**.

A separate judgment will enter.

SO ORDERED.

ENTER:

s/J. RONNIE GREER
UNITED STATES DISTRICT JUDGE
